ORR v. ORR.

1. EVIDENCE—EXECUTOR'S ACCOUNTS.—In action against an executor for account in which it is sought to charge him with an uncollected asset of his testator, he testified, against objection, that the life tenant told him that testator did not wish the debtor to be sued, and that the life tenant would never consent to such a suit. Although no ruling was made in the court below on this objection, it must be considered here, as the evidence bears so directly on the question at issue of the executor's good faith, and while it was incompetent so far as it attempted to declare the wishes of the testator as to the management of the estate. by hearsay and by verbal directions, it was competent so far as the life tenant's wishes were declared, and relevant to the issue of good faith.

2. EXECUTORS—UNCOLLECTED ASSET—LIFE TENANT.—Where testator devised and bequeathed his entire estate to his widow for life, "to have, to hold, and enjoy during her natural life," with remainder over, and such estate consisted in part of an unsecured note taken by testator, which the life tenant received into her possession and deterred the executor from suing by her express and earnest objections, and which after her death was worthless, the testimony failing to make it appear that earlier suit would have realized on the note, although others had collected money from the debtor, there is not sufficient to charge the executor with a want of that care and diligence which the law requires in such cases.

3. IBID.—IBID.—IBID.—Would the executor be relieved of all liability to the remaindermen under the terms of this will by surrendering to the possession and control of the life tenant an unsecured chose in action in the form in which the testator had left it?

Before IZLAR, J., Union, March, 1890.

Action by David Orr and others against Thomas J. Orr, executor, and others.   The opinion states the case.

*Mr. I. G. McKissick*, for appellant.

*Mr. J. C. Wallace*, contra.

August 11, 1891.   The opinion of the court was delivered by

Mr. Justice McIver.   James Orr, having duly made his last, will and testament, departed this life some time in the year 1876, and the appellant, Thomas J. Orr, was appointed executor thereof. who, on the 20th of December, 1876, duly qualified and entered upon the discharge of his duties as such.   There is no copy of the will set out in the "Case," but it is therein stated that "the testator devised and bequeathed to his wife, Martha Orr, all his real and personal estate, of every kind and description whatsoever, to have, to hold, and enjoy during her natural life, with remainder after her death of his whole estate, real and personal, to his children, to be equally divided share and share alike." On the 22nd of April, 1884, the life tenant departed this life, and on the 29th of June, 1886, this action was commenced, in which an account of the testator's estate was demanded of the appellant, as executor as aforesaid.   Amongst the assets of the testator's estate was a note of B. B. Foster for four hundred dollars, dated 9th of December, 1875, and payable to the testator. This note has never been collected, and the maker having become insolvent, the amount thereof has been lost to the estate, and the only question in the case is whether the appellant as executor is chargeable with the amount due on the note.

The executor, being examined as a witness, testified that the note came into his hands as executor after the death of his mother, the life tenant; that his mother, being an old lady, unable to attend to any business, gave witness all the papers to keep for her during her life; that she never would let witness collect any money on the notes, especially the Foster note, saying it was the testator's wish that Foster's note should stand as long as she lived, unless she actually needed the money, and although advised by the appellant several times to collect some

of the money, she always objected. After the death of the life tenant, appellant received a payment of ten dollars on the note, to bring the note within date. Counsel for respondents objected to the witness testifying "as to any transaction between witness and his mother in regard to this note, and furthermore what his mother said would be hearsay," So far as we can discover, there was no ruling, either by the master or the Circuit Judge, as to the competency of the testimony objected to, and no exception seems to raise this point. The defendant, Mary Orr, the daughter of testator and of the life tenant, testified that she lived with her mother up to the time of her death, and also corroborated the testimony of the executor as to the wish expressed by the testator that the notes should not be collected until after the death of the old lady, unless actually needed, as well as to the unwillingness of the mother to have the notes, particularly the Foster note, sued. This testimony was also objected to, but there does not appear to have been any ruling as to such objection. There was also testimony tending to show that the note of Foster was at one time collectible, as other claims against him had been enforced by third persons, after the death of the testator.

The master found as matter of law, "that it was the duty of the executor to have collected and invested the securities, or at least to have kept the same active and secured." And as matter of fact, that the Foster note was good and collectible, and that the debt secured thereby was lost by the failure of the executor to collect the same, and he therefore charged the executor with the amount due thereon. This report, upon exceptions thereto, was confirmed by the Circuit Judge, and from his judgment the executor, Thomas J. Orr, appeals upon the single ground that there was error in holding the executor liable for the Foster note.

While, as we have said, there does not appear to have been any ruling by the court below as to the competency of the testimony objected to as above, yet in a case of this kind we do not see how we can avoid a consideration of the competency of such testimony, bearing so directly, as it does, upon one of the vital questions in the case—as to the good faith with which the executor has acted. We do not see any valid ground of objec-

tion to the testimony as to what passed between the executor and the life tenant, except that portion of it which undertook to state the wishes of the testator in regard to the collection of the note in question, which is objectionable upon two grounds—first, because it was hearsay; and second, because we must look alone to the will for the purpose of ascertaining the wishes of the testator, without regard to any verbal directions which he may have undertaken to give, either as to the disposition or management of his estate after his death. But the appellant was not the executor of the life tenant, and hence the testimony as to any transaction or conversation with her would not be incompetent under section 400 of the Code; and while it is true that the respondents, not claiming under her, would not ordinarily be bound by anything she may have said, yet her expressed wishes as to the management of property in which she had the more immediate interest, would seem to be competent as throwing light upon the question of good faith on the part of the executor.

Assuming for the present that, although the Foster note constituted a part of the residue of the estate which was given in mass to the life tenant, still it was the duty of the executor to look after it, and see that the principal sum secured thereby was preserved for the remaindermen, yet it never was supposed that an executor was bound to insure the absolute safety of all the assets committed to his care. On the contrary, he is only required to exercise such care and diligence as prudent persons usually do in the management of their own affairs. Now, while ordinarily it is the duty of an executor or administrator to collect in the choses in action due the testator or intestate, and after providing for the debts, distribute the surplus amongst the several parties entitled under the terms of the will, or the provisions of the law in reference to the distribution of intestate estates; yet even in such case, if the parties interested prefer to receive their portions in the form in which their ancestor has seen fit to invest his property, whether by loans on notes or bonds, or in bank stock or otherwise, we do not see how the executor would be chargeable with any breach of duty in omitting to collect such notes and bonds, and turning them over in specie to the parties interested. But where, as in this case, the

choses in action, if collected, would have to be reinvested and held for an uncertain time—the life of the life tenant—there would be still greater reason for the executor omitting to call in an investment made by the testator, simply for the purpose of reinvesting the amount in some other form. In such a case the court would, and has in the case of *Pope* v. *Mathews* (18 S. C., 441), sanctioned the conduct of the executor in pursuing such a course.

It is true that the case just cited was decided by a divided court, of which the writer of this opinion constituted the minority; but, in the first place, there was no division in the court as to the non-liability of the executor for Judge O'Neall's individual note, in which the testator had allowed a portion of his estate to remain invested, just as the testator had here invested a portion of his funds in the Foster note; and in the second place, although the writer did not then, and does not now, approve of all that was decided in that case, yet it is an authoritative decision of the court of last resort, and no one, whatever may be his official station, has the right to disregard it. It is also true that in that case the loss resulted from the general disasters which followed the war between the States, while the loss here cannot be attributed to any such cause. But the case does decide that, while it is the duty of an executor or other trustee having funds in his hands to invest, to require good and sufficient security, yet where funds of the testator have been invested by him in his life-time in the note of a solvent person, without security, the simple fact that he allows the fund to remain in the form in which his testator saw fit to invest it, will not render the executor liable in case of unforeseen loss, unless such loss has been occasioned by some other fault on the part of the executor than that of allowing the fund to remain in the form in which the testator left it.

It is clear, therefore, that the simple fact that the executor allowed the money due on the Foster note to remain invested in the same form in which it was left by the testator, would not render him liable; and to make him so, some fault on his part should be shown, from which the eventual loss resulted. The fault claimed in this case was in not suing the note in time to

get ahead of other creditors of Foster, for all the claims which exhausted Foster's estate seem to have been sued. Whether the executor could, by the use of proper diligence, have succeeded in getting ahead of the other creditors, is not shown by the testimony in this case. Foster might, by giving voluntary liens upon his property, as he seems to have done in one instance at least, have defeated any effort upon the part of the executor to secure this debt. But more than this, the testimony shows that the executor was deterred from suing by the express and earnest objections of the life tenant—the party more immediately interested. This possibly may have rendered the estate of the life tenant liable to the remaindermen, just as if she failed or refused to take proper measures for the preservation of any other portion of the property given to her for life; but it seems to us it would be a hard measure of justice to hold the executor liable under all the circumstances.

There is also another view of this case, which we will present without intending to decide anything definitely, as it was not argued. As we understand the decisions in this State, it seems to be settled that where property, real and personal, is given to one in mass for life, with remainder over, that the whole mass is to be placed in the hands of the life tenant to be used as a whole during life, with a liability to account for and turn over to the remaindermen the whole mass, not in precisely *the same* plight and condition in which it was received, but in *as good* a plight and condition, allowing for the necessary "wear and tear" of imperishable articles, for example, plate, furniture, &c. See *Patterson* v. *Devlin*, McMull. Eq., 459; *Robertson* v. *Collier*, 1 Hill Ch., 373; *Calhoun* v. *Fergeson*, 3 Rich. Eq., 160; *Glover* v. *Hearst*, 10 *Id.*, 329; *Brooks* v. *Brooks*, 12 S. C., 422. Under this rule it might well be argued that where an estate, consisting of various kinds of property, one of which is a chose in action, is given as a whole to one for life with remainder over, the life tenant being entitled to the possession of the entire estate, when the executor has delivered the same to the life tenant in accordance with the directions of the will, his liability ceases, and the remaindermen can look alone to the estate of the life tenant, who, in a proper case, may be required to

give security for the forthcoming of the estate at the termination of the life estate in *as good*, though not in *the same*, condition in which it was received, the proper allowance above indicated being made.  If this view be adopted, then it is clear the executor would not be liable for the Foster note, as he seems, from the testimony, to have turned over that note along with all the rest of the property to the life tenant, who exercised absolute control over it during life.

The judgment of this court is, that the judgment of the Circuit Court, in so far as it makes the executor liable for the amount of the Foster note, be reversed, and that the case be remanded to that court for such further proceedings as may be necessary to carry out the views herein announced.